# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DENISE GRILLASCA
and KELLY MAYZIK,

     Plaintiffs,

vs.                     CASE NO. 8:05-cv-1736-T-17-TGW

HESS CORPORATION,

     Defendants.

_____/

## ORDER ON MOTION TO CERTIFY CLASS

     This matter is before the Court on Plaintiffs' Motion to Certify Class, filed on May 10, 2007 (Dkt. 78), and Defendant's Response thereto filed on June 6. 2007 (Dkt. 85). Additionally, this cause is before this Court on Plaintiffs' reply to HESS Corporation's response in opposition to Plaintiffs' Motion to Certify Class filed on July 9, 2007 (Dkt. 88). The following facts are accepted as true for the purpose of resolving the pending motion.

## BACKGROUND AND PROCEDURAL HISTORY

     This case involves Plaintiffs. Denise Grillasca and Kelly Mayzik (hereinafter referred to as "Grillasca" and "Mayzik" or "Representative Plaintiffs"), who were allegedly injured by HESS (Defendant) and, on September 16, 2005, filed a class action suit as representatives on behalf of themselves and the proposed class pursuant to 28 U.S.C. § 1332 (diversity).  On April 16, 2007, Plaintiffs filed a Third Amended Complaint and dropped the Defendant Am South from the instant case (Dkt. 74), and, thereafter, filed a Motion to Certify Class. (Dkt. 78)  In response to Plaintiffs' motion. HESS filed a response in opposition to Plaintiff's Motion on June 25, 2007 and asserted that Plaintiffs failed to meet the Rule 23 requirements of the Federal Rules of Civil Procedure. (Dkt. 85)  In response to HESS' response motion, Plaintiffs filed a reply to HESS' Response in Opposition to Plaintiffs' Motion to Certify Class on July 9, 2007. (Dkt. 88)  Plaintiffs maintain that all the requirements of Rule 23 have been met for Certification of Class.

*Plaintiff Grillasca*

On September 1, 2005, Plaintiff Grillasca visited a HESS gasoline filling station located at 11708 Seminole Boulevard, Largo, Florida 22778, with the intent to purchase gas, based on viewing the gasoline price sign posted outdoor located on the premises. The sign indicated $2.799 per gallon for octane 87 gasoline. Grillasca drove up to a gas pump and proceeded to swipe her AmSouth Check Card in the self-service, point-of-sale card reader attached to the fuel pumps. As the information on Grillasca's AmSouth Check Card was accepted, the gasoline pump screen attached to the card-reader authorized Grillasca to begin fueling. Grillasca purchased what the pump display screen indicated to be $10.00 worth of gasoline. (Dkt. 74 Exhibit A). Upon completion of the purchase, Grillasca expected HESS to withdraw $10.00 from her AmSouth Checking account, when, in fact, HESS requested a pre-authorized amount of $75.00. On the evening of September 1, 2005, while attempting to purchase groceries for herself and her child, Grillasca was unable to obtain funds from her checking account at the AmSouth automated teller machine (ATM). Hence, Grillasca was unable to complete the purchase of groceries. Grillasca then immediately reviewed her AmSouth checking account online and found that a $75.00 hold was placed on her account, pursuant to the gasoline purchase at HESS. Because of the hold on her account, Grillasca was unable to purchase food or obtain funds from September 1, 2005 to September 7, 2005. Grillasca asserts that HESS' pre-authorization request, exceeding her actual purchase price is unlawful. Grillasca seeks monetary and injunctive relief due to the injury she incurred, on behalf of herself and the prospective class.

*Plaintiff Mayzik*

On September 8, 2005, Plaintiff Mayzik visited a HESS gasoline filling station located at 1625 North McMullen Booth Road, Clearwater, Florida, with the intent to purchase gas based on viewing the gasoline price sign posted outdoor located on the premises. Mayzik drove up to a gas pump and proceeded to swipe her BankAtlantic Check Card in the self-service, point-of-sale card reader attached to the fuel pumps. As the information on Mayzik's Check Card was accepted, the gasoline pump screen attached to the card-reader authorized Mayzik to begin fueling. Mayzik purchased what the pump display screen indicated to be $26.35 of gasoline. (Dkt. 74 Exhibit B). Upon completion of the purchase, Mayzik expected HESS to cause to be withdrawn, $26.35 from her BankAtlantic

2

checking account. when in fact, HESS requested a pre-authorized amount of $75.00. At the time of her gasoline purchase, Mayzik had a balance of $390.96 in her checking account and also had an outstanding $300.00 home mortgage payment check, which had yet to be drawn against her referenced account. (See Exhibit B.) (The following facts are disputed) On the same day, after Mayzik's purchase of HESS gasoline, the above referenced $300.00 mortgage payment check was presented to BankAtlantic for payment. As a result of HESS's $75.00 pre-authorization request. Mayzik had insufficient funds available in her BankAtlantic checking account to pay the above referenced $300.00 outstanding mortgage check, which resulted in a $30.00 overdraft fee charge on her BankAtlantic checking account. (See Exhibit B) On or about September 12, 2005, a $15.00 check written by Mayzik was presented to BankAtlantic. As a result of HESS's $75.00 pre-authorization request, there were insufficient funds in Mayzik's BankAtlantic checking account to pay the referenced $15.00 check and on September 13, 2005. Mayzik was charged a (second) $30.00 overdraft fee by BankAtlantic. (See Exhibit B) Mayzik herein asserts that HESS' pre-authorization request, exceeding her actual purchase price is unlawful. Mayzik seeks monetary and injunctive relief due to the injury she incurred. on behalf of herself and the prospective class.

As a result of HESS's $75.00 pre-authorization request, both plaintiffs assert that they incurred financial damages, emotional distress and inconvenience, after they were denied the use of funds from their checking accounts. Plaintiffs now bring this class action as Representatives on their own behalf and on behalf of all others similarly situated under provisions of Rules 23(a): 23(b)(1)(A) and (B): 23(b)(2); and 23(b)(3) of the Federal Rules of Civil Procedure, for injunctive relief and for monetary damages.

## STANDARD OF REVIEW

The class-action suit is a procedural mechanism for joining parties. It permits single action litigation of multiple claims involving similar or identical questions of law and fact that arise from a common set of operative facts. Eyak Native Village v. Exxon Corp., 25 F.3d 773, 781 (9th Cir. 1994).

Class action suits serve some basic purposes. One primary purpose is to promote judicial economy and efficiency by avoiding multiple adjudications of the same issues. General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 159 (1982). Class actions afford aggrieved persons a remedy when it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions. Deposit Guar. Nat'l Bank v.

3

Roper, 445 U.S. 326, 339 (1980). The class action device enhances access to the courts by spreading litigation costs among numerous litigants with similar claims. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402-403 (1980). From the Defendant's perspective, class action provides a single proceeding in which to determine the merits of the plaintiff's claims and, therefore, may protect defendants from repeated and potentially inconsistent adjudications. Id.

### *RULE 23(a)*

Rule 23(a) sets forth four explicit requirements before commencement of a class action. These requirements are: (1) numerosity of parties (hereinafter numerosity); (2) commonality of legal and factual issues (commonality); (3) typicality of claims and defenses of the class representatives (typicality); and (4) adequacy of representation. A class must satisfy these requirements before it may be certified. Amchem Prod. Inc. v. Windsor, 521 U.S. 591, 613 (1997). One of the provisions of Rule 23(b) must also be concurrently met with the requirements of 23(a). Fed.R.Civ.P. Rule 23. Rule 23(a) requirements are "designed to effectively limit class to those fairly encompassed by the named plaintiff's individual claims". Cooper v. Southern Company. 390 F.3d 695, 713 (11th Cir. 2004). "Rule 23(a) is designed to ensure that the common bond between the class representatives claims and those of the class is strong enough so that it is fair for the fortunes of the class members to rise or fall with the fortunes of the class representatives. Prado-Steinman v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000).

The implied conditions of Rule 23 must also be satisfied before maintaining a class action. First, it is axiomatic that a class must exist, and that must be susceptible of a precise definition. Fed. R. Civ. P. 23(c)(1)(a). For a class action to proceed, the court must apply the class definition to each proposed class representative and find that the class representative is a member of the class. Although a class must be precisely defined, it is not necessary that every potential member of the class be identifiable at the commencement of the action. Davoll v. Webb, 160 F.R.D. 142, 144 (D. Colo. 1995). The standard for measuring whether a class has been defined with sufficient precision is whether the definition makes it administratively feasible for the court to determine whether a particular individual is or is not a member of the proposed class. A class action is possible only when the class definition provides a court with tangible and practicable standards for determining who is and who is not a member of the class. Pottinger v. City of Miami, 720 F. Supp. 955, 958 (S.D. Fla.

4

1989). Referencing to damages or injuries caused by a wrongful action taken by defendant will be sufficiently tangible and objective of a criterion for proper inclusion in a class definition in some circumstances. However, referencing strictly to the state of mind of a potential member would be too subjective and tenuous to be a proper criterion. As the court seeks for an objective and tangible criterion for proper inclusion at the certification stage, courts must be careful not to decide the underlying merits of the claims. Hagen v. City of Winnemucca, 108 F.R.D. 61, 63-64 (D. Nev. 1985).

A court must assess a proposed class definition in light of the facts of that particular case. No fixed test of sufficiency is possible. Generally, the rule for class certification is liberally construed to meet its objectives, and, therefore, a district court has broad discretion in determining whether a particular action complies with certification requirements: a court must not exercise its discretion in a manner that would undermine policies underlying class actions. Walco Investments, Inc. v. Thenen, 168 F.R.D. 315.(S.D. Fla. 1996).

A court need not accept or reject a proposed class definition on a take it or leave it basis. If the court determines that a proposed class description is not sufficiently definite, the court may elect action other than denial of class certification. The court may grant certification but modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies. Meyer v. Citizens & S. Nat'l Bank, 106 F.R.D. 356, 360 (M.D. Ga. 1985). Interest of justice require that, in doubtful case, any error, if there is to be one, should be committed in favor of allowing class action. In re Amerifirst Securities Litigation, 139 F.R.D. 423 (S.D. Fla. 1991).

### *RULE 23(b)*

Once all four prerequisites of Rule 23(a) are satisfied, a court will permit the action to commence as a class if the action falls within any one or more of three categories outlined in Rule 23(b). The first two categories, established by Rule 23(b)(1) and 23(b)(2), mainly concern actions for equitable relief, while the third category, established by Rule 23(b)(3), usually involves actions for money damages. The first category authorized by Rule 23(b)(1) concerns risks that separate actions by or against individual members of proposed class might produce inconsistent results. The second category authorized by Rule 23(b)(2) deals with situations where a party opposing a class has acted or refused to act on grounds applicable to the class as a whole, which justifies final injunctive relief or corresponding declaratory relief with respect to the entire class. This category is applicable in cases in which the class

members assert similar claims for equitable relief. Finally, the category authorized by Rule 23(b)(3) handles factual situations in which ordinary money-damages claims of class members may be resolved, in whole or in part. on a class-wide basis. A class action under Rule 23(b)(3) is appropriate if: (1) questions of law or fact common to the members of a class predominate over any questions that apply only to individual members; and (2) if a class action is superior to any other available method for the fair and efficient adjudication of the controversy. Rule 23(b)(3) actions are intended to achieve economies of time. expense and effort without sacrificing procedural fairness or other undesirable results.

In selecting which of the categories of Rule 23(b) are most appropriate for certifying any particular class, a court must balance an individual's due process rights with the judiciary's policy of expediting the orderly resolution of controversies. The court should certify a class only under those provisions that serve the goals of proceeding by way of a class action, while providing the degree of due process protection for the type of claims asserted by class members. In re Dennis Greenman Sec. Liti.. 829 F. 2d 1539, 1544 (11th Cir. 1987).

### *Federal Court Original Jurisdiction*

Under the Class Action Fairness Act, Federal District courts have original jurisdiction over all civil matters in which the amount in controversy exceeds $75.000.00. exclusive of interest and costs. and is between citizens of different States. (28 U.S.C. § 1332 (a)(1) (2007)) Additionally. in the context of a class action. District courts shall have original jurisdiction over any civil matter in which the amount in controversy exceeds $5,000.000.00 and any member of the plaintiff class is a citizen of a State different than any defendant. (28 U.S.C. § 1332(b)(1)(A) (2007)) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. (28 U.S.C. § 1332(d)(6)) (2007)) The aggregation requirement greatly increases the possibility that a federal court will have subject matter jurisdiction over large class actions involving a number of small monetary claims.

## DISCUSSION

This matter raises four issues pertaining to certification of class: (1) whether the proposed class is clearly ascertainable; (2) whether Plaintiffs satisfied all the requirements of Rule 23(a); (3) whether Plaintiff's satisfied any of the requirements of Rule 23(b); and (4) whether this Court can exercise original jurisdiction pursuant to the Class Action Fairness Act.

### *Adequacy of Defined Class*

As a preliminary requirement for class certification, Plaintiffs must demonstrate the existence of a class that can be precisely defined. Conigliaro v. Norwegian Cruise Line Limited, 2006 WL 2861520 (S.D. Fla.), 2006 A.M.C. 2934. The "proposed class must not be vague, and sufficiently definite and clearly ascertainable, such that the court can determine whether a particular individual is a member of the putative class. Id. "A vague class definition portends significant manageability problems for the court." Rink v. Cheminova, Inc., 203 F.R.D. 648, 660 (M.D. Fla. 2001).

HESS asserts that Plaintiffs' proposed class is not adequately defined. HESS stresses that the proposed class would require individualized fact-finding to determine whether each individual used a debit or check card to purchase gas versus using their credit card, in order for this Court to determine which customers were subject to the hold. (Dkt. 85 pg. 6) HESS asserts that its' company does not differentiate between debit card purchases and credit card purchases. HESS reasons that "even if it could be determined that a debit or check card was utilized, that fact is not dispositive because individuals who use their PIN when utilizing their debit card are not subject to the same pre-authorization as those who use their debit/check card as a credit card". As to HESS' assertions here, this Court disagrees.

This Court finds that the Plaintiffs' proposed class is adequately ascertainable. Plaintiffs' proposed class does not attempt to encompass all Debit Card/Check Card users. Plaintiffs' proposed definition as articulated in its response to HESS' opposition, excludes all purchasers not subject to HESS' pre-authorization request. [1]

---

[1] Dkt. 88 pp. 5 of Plaintiffs Response in opposition to HESS' motion.

Plaintiffs' Definition of Certifiable Class reads:

> **"The class of persons injured by HESS's conduct consists of all persons who purchased fuel by use of a Checkcard/Debitcard at a HESS station located in the state of Florida, and who were subjected without warning or notification by HESS to a HESS pre-authorization requirement in the amount, which exceeded the actual purchase price of the fuel". (Dkt. 88 pp. 5)** (*emphasis added*)

Here, the defined class does not encompass all Debit/Check Card users. Instead, it only includes those Debit/Check Card users, *"who were not informed of HESS's $75.00 pre-authorization, which said pre-authorization resulted in a hold placed on their personal financial account in an amount greater than the actual purchase of gasoline"*. (Dkt. 74 pg. 7) (*emphasis added*) Consequently, all customers who purchased $75.00 or more in fuel are automatically excluded from the proposed class, because HESS's pre-authorization request would not have been in excess of their purchase price. This Court finds that Plaintiffs' proposed class as defined is carefully tailored to include injured members only. Thus, no individualized fact-finding would be necessary by this Court to determine whether each individual used a debit or check card to purchase gas versus using their credit card. Plaintiffs' definition of class, assuredly excludes non-injured individuals from those actually injured from HESS's pre-authorization request.

HESS also alleges that the proposed class unnecessarily includes many individuals who would not have suffered any injury from the pre-authorization request because they banked with entities like Wachovia, who do not place holds on accounts. (Dkt. 85 pp. 7) HESS states that these individuals could not have suffered any injury in fact as a result of the pre-authorization requests, yet Plaintiffs' proposed class definition would include them as members. Furthermore, HESS adds that individuals with a balance well in excess of the banks' hold amount at the time of the transaction until the hold was removed, are also not potential class members. As to this argument, this Court also disagrees.

Revisiting prior analysis *in supra*, this Court finds that Plaintiffs definition includes only those customers who were subject to HESS's pre-authorization hold, in excess of the purchase amount. HESS fails to recognize that the proposed class as defined in Plaintiffs' complaint, includes only Debit Card/Check Card users, "who were (1) not informed that HESS would require a $75.00 pre-authorization, and (2) which said pre-authorization resulted in a hold placed on their personal financial account in an amount greater than the actual purchase of gasoline". (Dkt. 74 pp. 7)   As defined in the complaint, any member,

unaware of HESS's pre-authorization request, subject to a hold of an amount greater than the actual purchase price, is part of the proposed class. This applies to all members not notified, regardless of whether their balance well-exceeded the bank's hold. In other words, Plaintiffs' definition excludes both, customers who received notice or customers who were not subject to the hold. Moreover, the proposed definition would also exclude individuals banking with entities like Wachovia who do not implement holds. Having a hold enacted in excess of the purchase price, without any express consent or knowledge is the reason Plaintiffs filed suit in this case. Furthermore, the proposed class includes any potential member, subject to HESS's excessive pre-authorization request, regardless of how much credit or funds a particular customer held in their account, because they were still subject to the hold without any notice. Thus, it is rational for this Court to find Plaintiffs' definition acceptable. The Plaintiffs' defined the proposed class in a manner, such that this Court can readily distinguish and determine whether any customer is a member of the proposed class.

### *Numerosity*

In order to certify a class, a Court must find that all four of the requirements of Rule 23(a) have been met, concurrently with one of the three provisions of Rule 23(b). Fed.R.Civ.P. 23; <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 721 (11th Cir. 1987). Rule 23(a) first requires that the Plaintiffs establish that:

> (1)  the class is so numerous that joinder of all members is impracticable.
> (numerosity). See Fed.R.Civ.P. 23(a)

The numerosity requirement ensures that a class action will proceed only if there is a real need for the class action device. <u>In re American Med. Sys., Inc.</u>, 75 F.3d 1069, 1079 (6th Cir. 1996). Only when joinder is impracticable is there need for class action. As with all of the requirements of Rule 23, the burden of proving that the class is so numerous that joinder is impracticable lies with the party seeking class certification. <u>Siles v. ILGWU Nat'l Ret. Fund</u>, 783 F.2d 923, 930 (9th Cir. 1986). To meet that burden, the class proponent must proffer evidence of the number of members in the purported class or a reasonable estimate of that number. <u>In re Amerifirst Sec. Litig.</u>, 139 F.R.D. 423, 427 (S.D. Fla. 1991). The party seeking certification may not rely on conclusory allegations that joinder would be impracticable, or rely on mere speculation regarding the class size. <u>Siles v. ILGWU Nat'l</u>

Ret. Fund 783 f.2D 930 (9th Cir. 1986). However, it is well established that the party seeking certification need not be able to prove the exact number of members or identify each class member. Commander Props. Corp. v. Beech Aircraft Corp., 164 F.R.D. 529, 535 (D. Kan. 1995).

Whether joinder of all class members would be impracticable has no fixed measuring criteria. Rule 23 does not even require that class actions involve any specific number of putative class members. CV Reit, Inc. v. Levy, 144 F.R.D. 690, 696 (S.D. Fla. 1992). However, the required degree of numerosity depends on a variety of factors and circumstances in a particular case. These may include: (1) judicial economy arising from avoiding multiple actions, (2) geographic dispersion of class members, (3) financial resources of class members, (4) claimant's ability to institute individual suits, and (5) requests for prospective and injunctive relief that could affect future class members. Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986). Among this list, however, the most important factor in determining whether a class is so numerous that joinder is impracticable, is the absolute size of the proposed class. Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996). Although there are no rigid numerical tests for measuring impracticability of joinder, a court in the Eleventh Circuit has gone as far as applying numerical ranges of class size as general guidelines for the numerosity requirement. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1533 (11th Cir. 1986) (requiring at least a class membership of 20).

Here, Plaintiffs assert that they meet all the requirements of Rule 23(a). The Plaintiffs' complaint highlights several legal precedents to emphasize that there is no specific numerical requirement. Plaintiffs stress that a good faith estimation of the number of class members is sufficient to satisfy the Rule 23(a) numerosity requirement. In its attempt to satisfy numerosity, Plaintiffs proposed an estimation of the prospective class to be in the thousands. Because at the minimum, (10) or more persons per hour use either Check/Debit cards to purchase HESS self service gasoline diesel fuel, at each of HESS's hundreds of fuel stations in Florida, Plaintiffs reason that a proposed class of one hundred thousand members or more, is a realistic number to estimate. (Dkt. 78 pg. 5) Thus, Plaintiffs conclude that there is no dispute that the class is so numerous that joinder is impracticable, granted that the party seeking certification is not required to allege the exact number or identity of the class membership.

Although this Court has doubts as to Plaintiffs' estimate regarding the total number of members, this Court finds that Plaintiffs met the minimum number of class membership, in satisfaction of the prior Eleventh Circuits ruling in Cox. Id. (applying a standard minimum requirement of (20) members to certify class, presuming that amount in controversy is met) This Court finds that there is a good faith basis in assuming that there are at the least, (20) class members. In the instant case, Plaintiffs' attached four exhibits, which, at the least suggest (Dkt. 88-1 through 88-4) a good possibility that the injuries Plaintiffs sustained could have and will likely have happened to numerous other individuals similarly situated. Additionally, Plaintiffs here also tailored a workable system to demonstrate to this Court that it is likely that class membership is numerous enough (more than 20). Given that HESS operates approximately 1,250 HESS retail facilities from Massachusetts to Florida, Plaintiffs estimation that there are over hundred HESS gasoline stations within the state of Florida is reasonable.[2] Furthermore, assuming the veracity of the presumed number of gas stations in Florida, approximating that (10) or more customers purchase gasoline with either check or debit-cards per hour is also reasonable estimation. Besides, it is now reported that over 80% of all purchasers of gasoline in the United States use check or credit cards. (Re: Georgia Governors Bulletin). When Plaintiffs estimated figures, regarding the number of card users, and the number of gas stations, are considered, it is reasonable to quantify (20) members similarly situated as the Plaintiffs. After considering these figures, this Court finds it reasonable to estimate that there are enough persons (20) similarly situated as the Plaintiffs, to commence a class action.

In furthering our analysis, the geographic dispersion of class members may also cause joinder to be impracticable. Because Florida is a tourist state, it is reasonably estimated that many class members outside of the state of Florida have purchased gas at a Florida HESS station. Many of the proposed class members within Florida are also widely dispersed throughout the state. Joinder of all the non-resident and resident class members would be certainly difficult. Additionally, Plaintiffs tendered published proof demonstrating the possibility that other individuals have, or may have, incurred the same or a similar type of financial injury and inconvenience, directly as a result of pre-authorization holds requested by gasoline merchants. At this juncture, this Court assents to Plaintiffs' proffered explanation and evidence, and finds that there are enough persons widely dispersed (20 or more),

---

[2] HESS Corp. website: http://www.hess.com/aboutus/corporate_overview.htm

11

sufficient to satisfy the impracticality of joinder requirement of Rule 23(a). Walco Invs., Inc. v. Thenen, 168 F.R.D. 324.

### *Numerosity Unsatisfied*

Although there may be numerous persons similarly situated as the Plaintiffs, this Court is unsatisfied with Plaintiffs' estimate regarding the total number of class membership . Here, Plaintiffs are not required to allege the exact number of the class membership to achieve certification. Commander Props. Corp. v. Beech Aircraft Corp., 164 F.R.D. 535. However, to meet the burden of numerosity, the class proponent must proffer evidence of the number of members in the purported class or a reasonable estimate of that number, of which Plaintiffs herein failed to demonstrate. In re Amerifirst Sec. Litig., 139 F.R.D. 427 To suggest that in the aggregate, there are over one hundred thousand members, amount to sheer speculation in light of Plaintiffs' proffered evidence and the dearth of actually confirmed class members. This Court agrees with Plaintiffs that there may be scores of class members, when considering the numerous HESS customers who use credit or debit cards at hundreds of HESS's gas stations. However, it is extremely difficult for this Court to corroborate a class membership that exceeds even one thousand, much less, one hundred thousand. (Dkt. 74 pp. 7) Here, Plaintiffs failed to provide even minor evidentiary support, suggestive of a membership of one hundred thousand. This case has been pending for almost two years and Plaintiffs had the full benefit of an extensive discovery period, including class discovery. Plaintiffs also received a lengthy extension of time within which to file their motion for class certification. Presumably, if evidence suggesting that class members were in the thousands existed, Plaintiffs would have submitted it by now. All the evidences submitted are a few exhibits of isolated and irrelevant cases, involving complaints of pre-authorization holds by non-HESS customers, with the exception of Penny Chaisson shown in Plaintiffs' Exhibit C (Dkt. 88-4 pp. 1). Absent sufficient evidence and explanation to substantiate Plaintiffs' estimation, this Court must decline to certify a class. This Court is authorized to certify class only when class actions are absolutely necessary.

Besides, this Court also doubts that Plaintiffs meet the amount in controversy rule as required by § 1332 of the Federal Rules of Civil Procedure. Even if this Court were to assume that ten thousand members claimed $75.00 each for injuries they each sustained, the total damage will not amount to $5,000,000.00. In order to meet the amount in controversy, the Plaintiffs here must either provide a reasonable basis that there are over 62,500 members

or show that the total damage of the class exceeds $5,000,000.00. Absent a reasonable basis for meeting the amount in controversy and/or a better reasoned estimate of class membership, this Court will deny certification of class, and, further, it finds the estimated number of even a thousand members as too speculative and unsubstantiated in the light of Plaintiffs' proffered evidence and the circumstances of this case.

### *Commonality*

In order to certify a class. Rule 23(a)(2) must also be satisfied concurrently with one of the three provisions of Rule 23(b). Fed.R.Civ.P. 23: <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 721. Rule 23(a)(2) requires that the Plaintiffs establish that:

> (2) there are questions of law or fact common to the class (commonality). See Fed.R.Civ.P. 23(a)

Rule 23 does not require that all questions of law and facts raised be common. <u>Id</u>. at 725. "The commonality requirement serves the dual purpose of promoting: (1) fair and adequate representation of the interests of absentee class members; and (2) practical and efficient case management". <u>General Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 157 (1982). To satisfy the commonality requirement, courts commonly have ruled that sharing even one common question of law or fact is enough, even though Rule 23(a)(2) suggests that commonality requires more than one common question. <u>Rosario v. Livaditis</u>, 963 F.2d 1013. 1018 (7th Cir. 1992). Consequently. some factual differences in the claims of the class do not preclude a finding of commonality. <u>CV Reit, Inc. v. Levy</u>, 144 F.R.D. 690. 696 (S.D. Fla. 1992). Thus. the need for an individualized determination of damages suffered by each class member generally does not defeat commonality. <u>In re Amerifirst Sec. Litig.</u>, 139 F.R.D. 423, 428 (S.D. Fla. 1991) (differences in commonality will not defeat commonality).

HESS argues that Class Certification is not appropriate because Plaintiffs' questions are interrelated with individual questions, such as whether class members' banks informed individuals of the pre-authorization requests by merchants. HESS asserts that banks like Wachovia do not place holds when they receive pre-authorization requests and Bank Atlantic discloses to its customers that pre-authorization may be received from retail merchants in an amount in excess of the purchase. HESS argues that in these cases, customers are arguably deemed notified or warned of the holds.

At this time however, this Court has no way of knowing whether bank's notification

policies have any bearing on the duty of HESS to inform their customers. Both, the Plaintiffs
and HESS failed to assert any documentation or evidence to sway this Court on this point.
However, this Court does see a common issue of fact and law that satisfies the commonality
requirement.

This Court finds that Plaintiffs' properly alleged a common question of fact, in
satisfaction of Rule 23(a)(2) commonality requirement. The common factual issue that the
proposed members share with the representatives is, whether the class members were subject
to the same harm. The court in <u>Baby Neal ex rel. Kanter</u> found commonality because all class
members were subject to the same harm. <u>Baby Neal ex rel. Kanter v. Casey</u>, 43 F.3d 48, 56
(3d Cir. 1994). Here, Plaintiffs allege that they and the proposed class were unfairly subject
to a $50.00 or $75.00 hold placed on their personal checking accounts, in excess of their
purchase, as a direct result of HESS's pre-authorization request. This in effect deprived them
from having access to their funds. Both Plaintiffs, Denise Grillasca and Kelly Mayzik,
purchased gasoline at HESS gasoline station on different dates and, were charged in excess
of their purchase price and, thereafter, denied access to their funds for some amount of time.
They allege that the injury they sustained is a common episode, which happened to other
HESS customers, identified as the proposed class in this case. This Court finds that
Plaintiffs' allegation meets the commonality requirement.

This Court also finds that there is a common question of law shared by both the
representatives and the proposed members. The legal issue that the representative Plaintiffs
have raised is whether HESS's general policy of requesting pre-authorization without notice
to consumers, aside from bank notification, violates the Florida Deceptive Unfair Trade
Practice Act (FDUTPA). If there was a violation here, it is reasonable to infer that HESS's
customers, which include both the representatives and the proposed class, have been
negatively affected, which the Plaintiffs claim was the reason for their injury. This is a
common question of law that both the representatives and the proposed class have an interest
in knowing, and have a stake in.   Thus, this unsettled issue would require the attention of a
judicial forum if a class action were allowed.

This Court finds that one common question of law or fact as discussed *in supra* is
enough to satisfy the commonality requirement.  <u>Rosario v. Livaditis</u>, 963 F.2d 1018.
Although HESS's arguments concerning bank notifications may be relevant, its argument
cannot overcome the fact that there are common issues of fact and law that groups the
representatives with the proposed members. The questions of whether all class members were

subject to the same harm, as a result of HESS's pre-authorization request, and whether HESS's failure to notify its customers constitute a violation of FDUPTA are common questions of law and fact, shared by both the representatives and the proposed class. Although factual differences in the claims of each member may exist, the common questions of fact and law here, trumps minor differences, and, therefore, satisfy the commonality requirement of Rule 23(a)(2).

<em>Typicality</em>

In order to certify a class, Rule 23(a)(3) must also be satisfied concurrently with one of the three provisions of Rule 23(b). Fed.R.Civ.P. 23; <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 721. Rule 23(a)(2) requires that the Plaintiffs establish that:

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality). See Fed.R.Civ.P. 23(a)

One or more members of a class can sue or be sued as representative parties on behalf of all only if the representative parties' claims or defenses are typical of the claims or defenses of the class. <u>Cramer v. State of Florida</u>, 117 F.3d 1258, 1264 (11th Cir. 1997). The typicality requirement attempts to ensure that the representative party's interests are substantially aligned with those of absent class members. <u>Hanon v. Dataprods. Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992). Any potential conflict between the class representatives and the interest of the absent class members will preclude certification of the class. <u>Stewart v. Slaughter</u>, 165 F.R.D. 690, 699-700 (M.D. Ga. 1996).

Although some factual differences among the claims will not defeat typicality, the claims of the class representatives must arise from the same events, practice, or conduct, and based on the same legal theory as those of the other class members. <u>Appleyard v. Wallace</u>, 754 F.2d 955, 958 (11th Cir. 1985). However, typicality does not require that the class representatives' claims be identical to those of class members, and differences in damages will not destroy typicality. <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984). On the other hand, if factual differences between the representative's class and class claims predominate, the typicality requirement may be defeated. In other words, if courts must make highly fact-specific or individualized determinations in order to establish a defendant's liability to class members, there is no typicality. <u>Love v. Turlington</u>, 733 F.2d 1562, 1564 (11th Cir. 1984).

15

HESS argues that Plaintiffs failed to establish the typicality requirement. HESS asserts that the Plaintiffs' failed to establish actual damages from the holds that their respective banks placed on their accounts. HESS refers to the deposition statements given by Plaintiffs, where they admitted that they did not incur financial damages. (Mayzik deposition pp. 18, 35 & Grillasca deposition pp. 23). For that reason, HESS infers that such claim by Plaintiffs does not amount to a claim for actual damages. Plaintiffs' claim for loss of their ability to access the funds during the hold, HESS argues, amounts to only a claim for mental anguish and inconvenience. (Dkt. 85 pp. 5). HESS, therefore, concludes that the difference in the claims or interests is sufficient to destroy typicality. This Court disagrees.

As representatives, the Plaintiffs properly alleged that their claims are typical of the claims or defenses of the class, in satisfaction of Rule 23(a)(3) typicality requirement. Here, HESS mistakenly argues that different claims destroy typicality. The critical issue in determining typicality however, is not whether claims for damages are identical, but rather, it is whether the class representative's claims stem from the same events as those of the putative class. Appleyard v. Wallace, 754 F.2d 958. This Court finds that the claims arose from the same event or act. Plaintiffs' claim for damages and injunctive relief against HESS, is none other than for the alleged financial injury and inconvenience Plaintiffs incurred as a result of HESS's pre-authorization request in excess of the purchase, which HESS failed to notify Plaintiffs about. Plaintiffs argue that it is precisely this particular act by HESS, that give rise to the Plaintiffs' claim on behalf of themselves and the proposed class. Minor differences in claims do not destroy typicality. This Court finds that the claims of the proposed representatives are typical of the absent class members' claims, primarily because the all claims stem from the same particular act.

HESS also claims that the factual differences between the representatives and the proposed class predominate, enough to destroy typicality. HESS argues that the injury allegedly suffered by Plaintiffs is personalized and are not actual damages. Therefore, HESS concludes that Plaintiffs' damages are not typical of damages suffered by all members of the proposed class. In other words, HESS asserts that Plaintiffs failed to differentiate between members who suffered damages and those who did not. HESS concedes that the only typicality with respect to the Plaintiffs' claims of injury and most proposed class members is the fact that they suffered no actual damages. HESS arguments are well taken but this Court disagrees.

This Court finds that, to a substantial degree, the injury incurred by the representative

16

class and the putative members are similar. HESS mistakenly argues that factual differences in damages destroy typicality. The critical issue here is whether the injury incurred by both, the representatives and the proposed class is substantially similar. As stated earlier, the typicality rule does not require that the class representatives' claims be identical to those of class members. The same goes for identifying damages. The differences in damages (injury) will not destroy typicality. Kornberg v. Carnival Cruise Lines. Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). The typicality requirement may even be satisfied despite substantial factual differences when there is a strong similarity in legal theories. In the instant action, Plaintiffs claim that HESS violated the FUDTPA as well as having committed misrepresentation, negligence and breach of contract. This Court finds that there is sufficient reason to believe that the class members would have identical legal theories, chiefly because their claims arose from identical acts. Therefore, this Court infers that, even if the Plaintiffs prevail only on claims to nominal damages, the resulting judgment could allow other entitled class members to recover for actual damages. This Court finds that the typicality requirement on this point is satisfied despite factual differences in damages, because both the representatives and the proposed class substantially share the same legal theories for recovery.

Taking into account that the representatives and the proposed class share substantially similar claims and interests, which arose from similar acts by HESS, without significant conflict between them, this Court sees no reason to deny typicality. Here, the claims of the proposed representatives stem from events identical to the claims by the putative class. Whether the injury incurred by the putative class was financial damages or emotional distress, the differences in claims does not negate the similar legal theories that all class members share. It is apparent from the facts of this case that the representative party's claims and interests is well aligned with those of the proposed class members. Hanon v. Dataprods. Corp., 976 F.2d 497, 508 (9th Cir. 1992).

### *Adequacy of Representation*

In order to certify a class, Rule 23(a)(4) must also be satisfied concurrently with one of the three provisions of Rule 23(b). Fed.R.Civ.P. 23: Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 721. Rule 23(a)(4) requires that the Plaintiffs establish that:

> (4) the representative parties will fairly and adequately protect the interests of the class (Adequacy of Representation). See Fed.R.Civ.P. 23(a)(4)

17

The adequacy of representation requirement was designed to protect the due process rights of absent class members. Id. at 721. This requirement is essential to due process, because a final judgment in a class action is binding on all class members. Hansberry v. Lee, 311 U.S. 32, 61 (1940). Because the judgment in a class action has *res judicata* implications, for absent class members, due process requires that the interests of absent members be adequately represented by the named class members. Amchem Products, Inc. v. Windsor, U.S. 117 S.Ct. 2231 (1997). Its constitutional underpinnings make this a critical requirement in determining certification.

For a representative to be adequate, a named plaintiff may not have interests that conflict with the interests of other class members. However, adequacy of representation requirement does not require that interests of the class representatives and the absentee class members be identical. Similarly, the named plaintiff need only be an adequate representative, and need not be the best possible representative. Ballan v. Upjohn Co., 159 F.R.D. 473, 482 (W.D. Mich. 1994) (class representative need not be best of all possible plaintiffs). The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982).

Here, HESS disputes whether Plaintiffs would adequately represent the proposed class. HESS alleges that the Plaintiffs are not adequate representatives because, they claim, that Plaintiffs suffered no actual damages because: (1) their banks eventually returned the funds; and (2) Grillasca entered into a settlement with Amsouth Bank. HESS argues that Plaintiffs have not suffered any actual damages as a result of the pre-authorization, and their claim for damages relate only to alleged emotional distress and inconvenience in having to deal with the holds. (Dkt. 85 pp. 14). As a result, HESS doubts that Plaintiffs could fairly and adequately represents the interests of class members who may have suffered a completely different form of injury. HESS further reasons that, because the injury Plaintiffs suffered maybe different from what the proposed members suffered, both parties may have significantly different economic interests as well. Therefore, HESS concludes that Plaintiffs cannot adequately represent the proposed class because they have significantly different

economic interests than some of the proposed class members.

Although the injuries suffered by all class may differ, this Court finds HESS's reasoning incomplete. As articulated by the court in General Telephone, the adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23, as long as the interests and claims of the Plaintiffs and class members are consistent. Id. Here, the interests and claims of all class members are entirely consistent with the interests and claims of the Plaintiffs. Their common interest is, a declaration by this Court that HESS's actions were unlawful and a grant of injunctive or monetary relief to all members, depending on the type of injury they suffered. Aside from the assertion of minor differences in claims or injuries, HESS failed to supply substantial reasons as to why adequacy of representation should be denied. HESS here failed to notice that adequacy of representation requirement does not require that injuries of the class representatives and the absentee class members be identical. All it requires is that there be no conflict of interests between class members, which may undermine the adequacy principle. Amchem Products, Inc. v. Windsor. U.S. 117 S.Ct. 2231.

Having different economic interests also does not destroy adequacy of representation. While Plaintiffs may not be the best possible representatives here, this Court finds that they are adequate to represent the proposed class. Ballan v. Upjohn Co., 159 F.R.D. 482. As analyzed under the Commonality and Typicality Rules, the injury incurred by the representative class and putative members are similar, in that it arose out of the same act (HESS pre-authorization request). Here, Plaintiffs seek to settle the legality of HESS's practice of requiring the added monetary hold without notifying the customers or seeking their approval. Plaintiffs here allege that HESS's business practices adversely affected every member of the class in a similar manner. Thus, Plaintiffs allege that all members share a common economic interest. Under these facts, this Court finds that Plaintiffs are reasonable and adequate representatives on behalf of the proposed class for the reasons given above. Although this Court has not yet ruled on the merits of this case, the minor differences in economic interests, should not destroy the adequacy of representation by Plaintiffs, unless other elements of Rule 23(a)(4) is not satisfied. Other than asserting that all members may have different economic interests, HESS failed to describe any considerable interest that conflict among the members, sufficient to destroy adequacy.

Here, HESS also failed to establish a link between the Amsouth Bank settlement with any event or issue that may pose a conflict of interest in the proposed class. Dropping

Amsouth Bank from the instant action has no bearing on the ability of any of the proposed members to subsequently pursue litigation or seek legal remedies against their own banks. Because the injury of both Plaintiffs and the proposed class arose out of the same act, and given that differences in damages (injuries) should not destroy adequacy of representation absent a conflict of interest, this Court finds that, Plaintiffs satisfied Rule 23(a)(4).

### *23(b)(1)(A)*

In addition to satisfying all of the requirements of Rule 23(a), a plaintiff seeking class certification must establish that one of the three provisions of Rule 23(b) has been met. The court may certify an action as a class action under 23(b)(1)(A) if: (1) there is a substantial risk of separate actions being brought in the absence of a class action; (2) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class; and (3) the inconsistent or varying adjudications would, in turn, establish incompatible standards of conduct for the party opposing the class. See Fed. R. Civ. P. 23(b)(1)(A). Courts in the Eleventh Circuit have ruled that Rule 23(b)(1)(A) must also involve actions for equitable relief.

Here, the Plaintiffs seek class certification pursuant to Rule 23(b)(1)(A) and assert that the instant case is compatible with (b)(1)(A) certification. Plaintiffs assert that if the issues are litigated in more than one lawsuit, various courts might reach different conclusions about the policy language and the legality of HESS's deposit/pre-authorization practice. (Dkt. 78 pp. 16). Plaintiffs argue that subparagraph (A) was intended to encompass suits seeking a combination of injunctive and monetary relief.

This Court strongly disagrees with Plaintiffs' proposed application on Rule 23(b)(1)(A). Plaintiffs here ignore the prior holding by the Eleventh Circuit, which held that certification under this subsection is appropriate only for plaintiffs seeking injunctive and declaratory relief. In re Dennis Greenman Securities Litigation, 829 F.2d 1539, 1545 (11th Cir. 1987). Underlying this rule is the concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3). *See* McDonnell Douglas, 523 F.2d 1086 (9th Cir. 1975). The court in Cohen ruled that the class seeking "compensatory damages cannot be certified as a (b)(1)(A) class." Cohen v. Office

Depot, Inc., 204 F.3d 1069, 1078 n.7 (11th Cir. 2000)  The precedent holding of the Eleventh Circuit is clear on this issue.  Therefore, this Court finds that certification pursuant to Rule (b)(1)(A) is not appropriate in the instant case, because Plaintiffs here, undoubtedly seek compensatory damages, including claims for emotional damages.

### 23(b)(2)

   An action may be maintained as a class action under subpart 23(b)(2) if the party opposing the class action acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  F.R.C.P. 23(b)(2).

   Parties seeking to certify class actions under Rule 23(b)(2) must, by the express terms of the Rule, request final declaratory or injunctive relief.  Bower v. Bunker Hill Co., 114 F.R.D. 587, 596 (E.D. Wash. 1986).  It is not sufficient that injunctive or corresponding declaratory relief be among the remedies sought by the parties.  In most cases, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages.

   Here, Plaintiffs failed to identify precedent holdings by the Eleventh Circuit regarding certification under Rule 23(b)(2).  The primary request of Plaintiffs in the instant case is one for money damages. Excluding the injunctive relief, sought in Count II by Plaintiffs in their Third Amended Complaint, relief sought on Counts I, III, IV, V are all for money damages.  Class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is for money damages.  Murray v. Auslander, 244 F.3d 807, 812 (11th Ccir. 2001).  The court in Murray held that monetary relief may be obtained pursuant to Rule 23(b) so long as predominant relief sought is injunctive and declaratory.  Id.  Pursuant to the Eleventh Circuit's holding in Murray, certification of class under Rule 23(b)(2) is inappropriate in the instant case.

### 23(b)(3)

21

Under Rule 23(b)(3), a class action may be maintained if the court finds: (1) that common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for resolving the controversy.

A class action primarily for money damages may be certified under Rule 23(b)(3). Unlike Rule 23(b)(1) and (b)(2), Rule 23(b)(3) does not require that declaratory or injunctive relief be sought. Rather, it requires only that a class action achieve an economy of time, effort, and expense without sacrificing procedural fairness.

HESS asserts that the individualized issues in this case predominate over any common issues because they are so numerous. HESS states that one of the most overriding individualized issue that lurks on this case is that many class members have not suffered any actual damages resulting from the holds their respective banks may have placed as a result of the pre-authorization request. Moreover, HESS argues that, to the extent any damages were suffered, they would be specific to each class member. Therefore, HESS concludes that these types of individual legal and factual issues predominate over any general issues that may be common to the proposed class. This Court however disagrees.

In the instant case, this Court finds that the common questions of law or fact predominate over individualized questions affecting each member. For one, the substantive elements of class members' claims require the same proof for each class member. Anderson v. Bank of the South, N.A., 118 F.R.D. 136, 150 (M.D. Fla. 1987)(common elements of plaintiff's claims involved proof of defendant's fraudulent scheme). All class members share a common interest, to establish that HESS's practice of requesting pre-authorization holds on customers' accounts without notice is unlawful, among other claims. Secondly, The proposed class is also bound together by a mutual interest in resolving common questions, more than insisting on their own individual interests. Additionally, because individualized claims against HESS would be too expensive and impractical to pursue, the resolution of the issue common to the class, under a class action suit, would significantly advance the litigation. Besides, courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues. Thus, courts must engage in qualitative rather than quantitative analysis to ascertain whether predominance requirement is satisfied. Buford v. H&R Bloch, Inc., 168 F.R.D. 340, 356 (S.D. Ga. 1996). Even though individual damage issues remain, this Court finds that the common questions shared by all members

considerably predominate over individual questions of liability.  CV Reit, Inc. v. Levy, 144
F.R.D. 699.

### Notification of Class Action

Finally, HESS criticizes Plaintiffs for their failure to comply with Local Rule 4.04(b)
which states that "if a determination is sought that the action shall be maintained under Rule
23(b)(3), the motion shall also suggest a means of providing, and defraying the cost of, the
notice required by Rule 23(c)(2). HESS asserts that Plaintiffs' motion failed to include any
such suggestion and is, therefore, defective.

This Court agrees that Plaintiffs' motion regarding this issue is defective.  Plaintiffs
here have disregarded the issue in its entirety.  Plaintiffs had discovery opportunities and
ample time to suggest a means of providing, and defraying the cost notifying all members
who can be identified in this case.  However, Plaintiffs have failed to do so. This failure goes
to whether Plaintiffs are adequate representatives, diligent enough to provide satisfactory
representation on behalf of themselves and the proposed members.  This Court admonishes
Plaintiffs for failure to understand and strictly adhere to the requirements of class action in
the future as declared in the Federal Rules of Civil Procedure.

## JURISDICTION

District courts have original jurisdiction over all civil matters in which the amount in
controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of
different States.  (28 U.S.C. § 1332 (a)(1) (2007))  Additionally, in the context of a class
action, district courts shall have original jurisdiction over any civil matter in which the
amount in controversy exceeds $5,000,000.00 and any member of the plaintiff class is a
citizen of a State different than any defendant.  (28 U.S.C. § 1332(b)(1)(A) (2007))  In any
class action, the claims of the individual class members shall be aggregated to determine
whether the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of
interest and costs.  (28 U.S.C. § 1332(d)(6)) (2007))  The aggregation requirement greatly
increases the possibility that a federal court will have subject matter jurisdiction over large
class actions involving a number of small monetary claims.

In the instance case, this Court finds that neither one of the two elements necessary
for subject matter jurisdiction is present as here.  Although the Plaintiffs clearly meet the

diversity of citizenship requirement, this Court is unable to determine if the necessary amount in controversy is present to allow this Court to assert jurisdiction over the matter. Even if this Court were to assume that in the aggregate, there were sixty thousand $75.00 claims by every member, for injuries they each sustained, the total damage will still not amount to $5,000,000.00. In order to meet the amount in controversy, the Plaintiffs here must either provide a reasonable basis that there are enough members or show that the total damage of the class exceeds $5,000,000. This Court agrees that there are numerous individuals who are similarly situated. But to say that the class membership may amount to one hundred thousand members or more is inconceivable. Absent a reasonable basis for the total damages figure or the number of class members, this Court denies certification of class because this Court finds the estimated number of one hundred thousand members or more, to be too speculative and unsubstantiated in the light of the proffered evidence and the circumstances of this case.

### Superior Method of Adjudication

In addition to predominance of common questions, subpart 23(b)(3) requires a finding that "a class action be superior to other available methods for the fair and efficient adjudication of the controversy". In determining superiority, courts must consider alternative methods of adjudication the dispute. Butt v. Allegheny Pepsi-Cola Bottling Co., 116 F.R.D. 486, 492-493 (E.D. Va. 1987).

Plaintiffs assert that this case readily satisfies the superiority requirement of 23(b)(3) because (1) every class member has a common interest in proving the defendant's uniform course of conduct is wrongful and actionable; and (2) the number of class members here is far too large (thousands) and some claims may be too small to warrant each individual class member prosecuting a separate action. Plaintiffs further reason that individual actions would not be a viable alternative to class action when individual recovery will be small. (Dkt. 78 pp. 18).

In the instant action, this Court finds that class action would have been a superior method to other methods of adjudication if, Plaintiffs had satisfied the amount in controversy requirement. This case would have been a legitimate option considering that every class member share common interest and similar claims for injuries sustained. In addition, there are numerous persons similarly situated as the Plaintiffs, and the claims may too small to

24

warrant each individual class number prosecuting a separate action. Unless this litigation proceeds as a class action, some Class members may be left without a remedy.

If Plaintiffs here had not failed in demonstrating the numerosity requirement and the amount in controversy, this Court would not have hesitated to grant certification of class. However, the facts show that Plaintiffs failed to prove these requirements. Thus, class action is no longer a viable option for adjudication. In order to ensure that class action is necessary, Plaintiffs must show that class is so numerous that joinder is impractical, and demonstrate that the total damage amount meets the amount in controversy requirement of 28 U.S.C. § 1332. Because this Court does not have original jurisdiction to try this case, class action is not a viable option.  Accordingly, it is:

**ORDERED** that Plaintiff's Motion to Certify Class (Dkt. 74) be **DENIED**.  The Clerk of Court is **DIRECTED** to dismiss this case with prejudice and close the case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this _____ day of July, 2007.

ELIZABETH A. KOVACHEVICH
United States District Judge

cc: All Parties and Counsel of Record